NEW-YORK,
May, 1806.

M'Intire
v.
Bowne.

* See the case of
*D. & G. Lud-
low* v. *Bowne &
Eddy, ante,* p. 1.

</div>

. M'Intire *against* Bowne.

THIS was an action on a policy of insurance, dated the 26th *June* 1801, on the *vessel* called the *Marcus,* valued at 3400 dollars, on a voyage " from *New-York* to *Trinidad* and from thence back to *New-York,* with liberty to stop and trade at *Curracoa.*" The cause was tried at the *New-York* sittings, on the 24th day of *April,* 1805, before Mr. Justice *Thompson,* when the jury found a verdict for the plaintiff.

The plaintiff claimed for a total loss by *barratry* of the master. The broker testified, that at a meeting between the assurer and assured, the latter claimed for a total loss by *barratry,* and exhibited the protest of the captain ; that though no *formal* abandonment was made, he regarded it as understood and admitted by the parties, who agreed, that a new insurance should be effected on the vessel, from *Maraicabo* to *New-York,* for the benefit of whomever it might concern, and without prejudice to the plaintiff's claim on the defendant.

The plaintiff was owner of the vessel, and by a charter-party, dated the 13th *June,* 1801, he *granted and let to freight,* the said vessel, to two persons of the name of *Aken & Brice,* excepting one half of the cabin, the privilege for twenty barrels for the master and mate, and so much of the hold and forecastle, as was necessary for the accomodation of the master and crew, provisions, &c.

<div style="text-align: right">

*M* chartered a vessel to *A & B* for a particular voyage, reserving half the cabin, and certain privileges for the master and mate ; and covenanted to hire and pay the master and crew, and furnish them with all provisions, &c. The master, at the request of *B,* who was on board, went out of the course of the voyage, and the vessel was captured by a *Spanish* privateer. It was held that *M,* notwithstanding the charter-party, continued owner of the vessel for the voyage, and that the deviation amounted to an act of *barratry* in the master, for which the insurers on the vessel were liable.

</div>

NEW-YORK,
May, 1806.

M‘Intire
v.
Bowne.

The voyage described in the charter-party, was the same as that mentioned in the policy. The plaintiff covenanted to have the vessel ready, and to receive along side, such cargo, contraband goods excepted, as *Aken &* *Brice* should tender, and the vessel could conveniently carry ; and to proceed on the voyage described, and that master and crew should assist in landing the cargo, &c. The owner was also to hire the master and crew, and pay all their wages, and the expenses for the voyage.

The charter-party contained the usual covenants on the part of *Aken &* *Brice* as to providing the cargo, and *demurrage* ; the whole freight was to be paid at *New-York*, on the delivery of the return cargo. The vessel went to *Trinidad;* and while proceeding on her return from that island towards *Curracoa*, the master, at the request of *Brice*, who was on board and acted as supercargo, changed his course and went to a port on the *Spanish* main. On its being first proposed by *Brice* the master objected, as being against his orders ; but on *Brice's* agreeing to pay him a hundred dollars, and to *indemnify* him and the owners of the vessel, he consented to go to *Laguira*. The master then went to *Caballo*, but was ordered the next day to depart, and afterwards, being near *Curracoa*, he was captured by a *Spanish* privateer and carried into *Maracaibo,* where the vessel was libelled by the captors, but was afterwards released. The supercargo thereupon sued for damages, and the captors then appealed from the sentence of acquittal. The cargo was taken and sold, and the proceeds deposited in the king's treasury, until the determination of the appeal. The vessel being restored, the master sailed from *Maracaibo*, leaving *Brice* there. The protest of the captain which had been exhibited among the preliminary proofs, was stated in the case ; and he declares that he went to *Caballo*, in consequence of the request of *Brice* and his express promise, to indemnify both him and the owners, from all the consequences of the deviation from the voyage

mentioned in the charter-party. And he entered his protest at *Maracaibo* against the acts of *Brice.*

The judge, in his charge to the jury, stated the inclination of his opinion to be, that the plaintiff, not *Aken &*
*Brice*, must be considered as the owner of the vessel, for the voyage; and if so, the plaintiff was entitled to recover for the barratry of the master; otherwise, it was a *deviation* which discharged the defendant from the contract; but he left it to the jury to decide who was the owner. On giving their verdict, the jury declared, that they considered the plaintiff as owner for the voyage.

*Hoffman* for the defendant. Two questions arise in this cause. 1. Whether an abandonment, and sufficient preliminary proofs were made, prior to the commencement of this suit? 2. Who was the owner of the vessel *pro hac vice ?*

1. The protest of the master, received among the preliminary proofs, negatives the fact of *barratry*, and the defendants ought to be bound by that evidence. The testimony of the broker, does not prove any written or parol abandonment, but merely that, from the conversation between the parties, he understood, that there was an abandonment for a total loss.

2. The most important question is, who is to be considered as the owner of the vessel for this voyage? The charter-party is not a mere covenant to carry the goods of *Aken & Brice ;* the vessel is let to freight for the voyage. In the case of *Velleijo* v. *Wheeler*,* the person to whom this vessel was chartered, was considered as the owner *pro hac vice*, and justice *Aston* observes, that where there is a deviation with the consent of the owner of the vessel, and the master is not acting for his own private interest, it is nothing but a deviation with the consent of the owner, and the underwriter is excused. Where a ship is let out to freight generally, the freighter is considered as the owner for that voyage.† And *Millar*,‡ in distinguishing between the *freighter*, and the mere shipper of *goods,*

* *Cowper*, 143.
S. C. *Loft.* 631.

† *Marshall*, 454.
*Cowper*, 155.
*Park*, 89.

‡ *Millar* on insurance, p. 168.

NEW-YORK,
May, 1806.

M'Intyre
v.
Bowne.

* Millar, 174.
† 2 Strange, 1251, more fully reported by Abbot, p. 16.

§ Abbot, 18. James v. Jones, 3 Esp. 27.

*Marshall,442, 445, 449, Velleijo v. Wheeler. Cowper, 155, Ross v. Hunter, 4 Term, 33. Moss v. Byrom, 6 Term, 379. † 2 Strange, 1257.

remarks, that the *freighter* either appoints or *approves* of the master, and superintends the whole adventure, and may not improperly be considered, as the temporary owner of the ship. Here *Aken & Brice* had the direction of the voyage and must be considered the temporary owners. If they did not appoint, they approved of the master, and had the direction of him, in relation to the voyage. If a vessel is let to a *single person*, it is sufficient to constitute him the *freighter*, or owner *pro hac vice*.* As to the case of *Parish* v. *Crawford*,† which may be cited on the other side, it may be remarked that the authority of that case, is greatly shaken, if not destroyed, by more recent determinations.§ It can scarcely be applicable to the present case, which is on a policy of insurance.

*Pendleton & Benson*, for the plaintiffs. The material question is, who is to be considered as owner, in order to determine against whom the crime of barratry is committed. *Barratry* is any species of fraud, deceit, or cheating by the master or mariners, with intent to injure or defraud the owners.* It is an act committed by the master, in violation of his duty, in the relation in which he stands to the owners of the ship. The master is responsible for his conduct to the person who appoints him. This responsibility furnishes the true criterion of ownership, as to the question of *barratry*. In the case of *Parish* v. *Crawford*,† this principle is recognised, and the true distinction is taken to be, that he, who by the contract has the appointment of the master, is to be considered as owner, and liable for the acts of the master. This establishes the relation of owner and master, the violation of the duties of which relationship on the part of the master, constitutes *barratry*. The plaintiff hired the master and crew for the voyage, paid all their wages, and furnished them with all the provisions and necessaries for the voyage. *Aken & Brice* had no controul over the master. The vessel was merely let to them to carry their goods, reserving certain privileges for the master and mate, and a part of the vessel for the accommodation of the

NEW-YORK,
May, 1806.

M'Intyre
v.
Bowne.

master and crew. The ship was not transferred to *Aken &* *Brice*. It was a mere *covenant to carry their goods*, or to give them the use of the vessel for that voyage. The plaintiff covenants, that certain acts shall be done by the master and crew in relation to the goods of *Aken & Brice*. This shews that the plaintiff had the entire direction and controul of the master and crew, and that this was a mere agreement for the carriage of the goods. Suppose *Brice* had not been on board, would not the plaintiff have been responsible to the shippers for the misconduct of the master? Could any action be maintained against *Aken & Brice* for the master's misconduct? In *Parish* v. *Crawford*, the appointment of the master was considered as decisive of the *ownership*, and that such owner was liable to *third* persons for the acts of the master. Now what will make him liable to *third* persons as owner, for the acts of the master, will constitute him the owner, so as to be entitled to his indemnity on a policy of insurance. The *barratry* in this case, consisted in a wilful and direct breach of orders. But who was entitled to give those orders, and from whom did the master receive them? From the plaintiff—not from *Aken & Brice*. Some confusion has arisen as to the precise meaning of the word *chartering*. Where a person lets the whole of his vessel, so that the hirer has the entire possession and controul, this is properly a charter-party. The right of possession for the time is gone, as in the case of the lease of a house for a term of years;\* the *hirer* is the *complete owner* for the time, and the *lessor* cannot take possession. But in the loose and common acceptation of the word chartering, it is

---

\* In *Velleijo* v. *Wheeler*, *Loft*, 640, 641. Lord *Mansfield* observes, " A good deal depends on the nature of the agreement by the charter-party, whether it is an agreement between the owners and freighters, that the ship shall go to a particular place, or whether it is a letting of the ship to the freighters."—"It is material, when a ship is let to freight, whether the owners of the goods have not the direction; if it be let as a house to the freighter, then the freighter is the owner; if, on the other hand, it is only a covenant between them that the ship shall go that voyage for the freighter, then it is only like a hackney coach, and the freighter has only the use for his goods, not the direction."

NEW-YORK,
May, 1806.

M'Intyre
v.
Bowne.

meant the letting a vessel to freight to carry goods. This is the present case, and is like advertising a *general ship* for freight, with certain restrictions as to time, &c. In either case, the ownership would remain entire, and the owner would be obliged to furnish a master and crew. In case of a general ship, it is not usual to have deed, or charter-party; separate bills of lading or contracts are made with the separate shippers. The signing a charter-party in the present case, can make no difference as to the question of ownership. Might not the plaintiff have maintained *trover* against a third person, who had wrongfully obtained possession of this vessel during the voyage? If the goods had been spoiled, would he not have been answerable for the damage? Had not the plaintiff a right to abandon the ship during the voyage, and to transfer his right of possession to the insurer? In short, are not all the *indicia*, and incidents of *ownership*, to be found with the plaintiff?

§ 3 *Epinasse's* Cases, 27.

It is said, that the authority of the case of *Parish* v. *Crawford*, has been weakened by that of *James* v. *Jones*.§ But it does not appear how the vessel was chartered in that case. It is a short note of a *Nisi Prius* decision, and not entitled to much attention. With deference to Lord *Kenyon*, it may be observed, that the true point of inquiry was, not who was the charterer, but who appointed the master, and gave him his authority. If the master let the vessel without any authority from the owner, there could be no privity of contract between him and the shippers of goods.

‖ 2 *Atkins*, 622.

In the case of *Paul* v. *Birch*,‖ Lord *Hardwicke* takes the distinction made in *Parish* v. *Crawford*. He says, " the " money paid to the owner of the ship was improperly term- " ed freight; it was rather for the hire of the ship, as the " *freighter* was at liberty to appoint the master and mari-

* 6 Term, 379.

" ners." In the case of *Moss* v. *Byrom*,* which is strongly in point, the plaintiff had hired the ship of the owner for a particular voyage. The master took out *letters of marque*, without intending to use them, except in self defence; but during the voyage, having gone out of his course in order to take a prize, such conduct was held to be *barratry*, be-

cause against his instructions, and contrary to his duty to the owner of the ship, who was responsible to the freighter for any loss happening in consequence of this act.   There appears to be some confusion in the case of *Velleijo* v. *Wheeler* ;† but if attentively examined, it will appear that *Darwin* had the entire controul of the ship, and the circumstance of his being the *general freighter*, and having the direction and controul of the vessel, was considered as decisive of his *ownership pro hac vice*.§   Though the precise question now before the court did not arise in the case of *Kendrick* v. *Delafield*,§ as the original owner had parted with the possession and controul of the vessel, yet the general principle now contended for was recognised by the court.

*Harison*, in reply.   1.   The insured, if he mean to sue for a total loss, must comply with one of the terms of his contract, and exhibit his proofs thirty days before the commencement of his action.   The only evidence offered in this case, was the protest of the master, which does not prove a *barratry*.   There should be proof of the very loss for which he means to claim an indemnity, otherwise this clause in the policy would be perfectly nugatory.   The silence of the insurers is not to be construed into an admission of satisfactory proofs.   Neither the protest, nor other papers produced, con-

NEW-YORK,
May, 1806.

M'Intyre
v.
Bowne.

§ *Marshall*,
455, 456.

§ 2 *Caines*, 67.

---

† Some of the facts in the case of *Velleijo* v. *Wheeler*, are not correctly stated by *Cowper*.   By recurring to the report of the same case in *Loft*, 631, and to the other books in which it is mentioned, the facts will be found to be these :   One *Willes* was the absolute owner of the vessel, of which *Browne* was the captain ;   *Browne* chartered the vessel to *Darwin*, for a voyage from *London* to *Seville*, who put her up as a *general ship*, and *Velleijo* and others were the shippers of goods.   The captain went to *Guernsey*, and took in brandy, with an intention to smuggle it.   The jury, under the direction of Mr Justice *Ashurst*, found, that the captain went to *Guernsey* with the privity of *Willes*, the owner of the vessel, but without the *privity* of *Darwin*, who was owner *pro hac vice* under the charter-party.— *Buller* states positively, *(Cowper, 152)* that *Darwin* did appoint the master for this voyage ; and from the expressions used by Lord *Mansfield*, that fact is fairly to be inferred.   " The question," his Lordship observes, " is, what is the ground of complaint against the master ?   He had agreed to go on a voyage from *London* to *Seville* ; *Darwin* trusts he will set out immediately."   *Cowper, 155.*   See *Loft, 645.*

NEW-YORK,
May, 1806.

M'Intyre
v.
Bowne.

tain a proof of barratry. The fact of a new insurance is not equivalent to an assent on the part of the insurers to the sufficiency of proofs. It was a mere temporary arrangement, made to secure the property for whomever it might concern. Though this is a point of inferior importance in the cause, yet the court ought to give effect to the clause in the policy requiring these preliminary proofs, or it may as well be struck out, as an useless provision.

2. If *Aken & Brice* were the owners of this vessel *pro hac vice*, *their consent* renders the act of the master a mere deviation. If *M'Intyre* be the owner, then the deviation amounts to *barratry*. This is a point of considerable moment, and attended with some difficulty and embarrassment, on account of the apparent obscurity in the authorities which have been cited on the subject. Ownership may exist in different persons, at the same time, for different purposes. As in regard to land, the lessor is considered as owner for one purpose, as in case of *waste*, and the *lessee* for another, in regard to his term. The plaintiff, as the general owner, could have his right of action, after the termination of the voyage, against *Brice*, for any mismanagement, or misuse of the vessel. It does not follow, however, that he is to be considered as owner in every case. Though as general owner, he has let the vessel, yet for some purposes, and particularly in regard to insurance, *Aken & Brice* may be considered as owners *pro hac vice*. None of the writers on insurance have cited the case of *Parish* v. *Crawford;* neither *Park*, *Millar* nor *Marshall*, though the latter published his treatise the same year in which *Abbot's* book appeared. It is very remarkable, considering the great industry and research of these writers, that this case, if it had any application to the subject of insurance, should have been wholly overlooked by them. It may fairly be inferred, that they considered it, as applicable only between the *shippers of goods*, and *ship-owners*. But, supposing it was applicable to a case of insurance, it may be said, that it was decided when the science of commercial law in *England* was in its infancy, and that it has been overruled by the recent deci-

sion of Lord *Kenyon* in the case of *James* v. *Jones.*† True, that was a decision at *Nisi Prius*, but it was made by a very learned and experienced judge ; and it does not appear that any application was ever made for a new trial, or that the correctness of his opinion has ever been questioned. The case of *Velleijo* v. *Wheeler*,§ is the leading case on this subject in relation to insurance. *Brown* chartered the vessel to *Darwin* for a voyage, not for a term of years. It was a general ship, put up for a voyage from *London* to *Seville*. A person may take up the whole vessel as a general ship, or he may charter her, which is different. It is better to take a charter-party than to fill up a vessel as a general ship. *Brown*, the master, was not appointed by *Darwin*, who had the same power over the master and crew, that *Aken &* *Brice* had in the present case. Here is a charter-party which imports a *hiring* for the voyage ; and *Aken &* *Brice* had a vested interest in the vessel for the voyage ; they had a perfect right to go on board, to take possession of the vessel, and sail in her without paying any thing for their passage. But had this been a mere contract for the *carriage of goods*, *Aken &* *Brice* would have had no right to take possession of the vessel. The reservation of half the cabin, and the *privilege* of the master and mate, can make no difference. *Aken &* *Brice* were no less the *owners pro hac vice*. They took possession of the vessel, *let* to them by the plaintiff, subject to this reservation, which is a matter of usage, in all foreign voyages. By the charter-party, *Aken &* *Brice* had the order and direction of the vessel. They were to pursue the voyage, in the manner they thought best. They had liberty to touch and trade at *Curracoa*. If the master had died, might not *Brice* have appointed another ? If any person had wrongfully taken possession of this vessel during the voyage, might not *Aken &* *Brice* have brought their action against him ? The *general freighter* is clearly the *owner pro hac vice*. The *general affreightment*, or letting to hire of the entire vessel, is, then, the true criterion of *ownership*. It is the principle on which the case of *Velleijo* v. *Wheeler*, and all the subsequent decisions are found-

NEW-YORK,
May, 1806.

M'Intyre
v.
Bowne.

† 3 *Epinasse's* Cases, 27.
§ *Cowper*, 143.

† 6 Term, 379.

ed. A lessee for years is *owner* of the land during the *term*. Suppose he covenants with the lessor or reversioner that he will employ a particular steward or servants on the farm appointed by the lessor, would he be less the owner on that account? The appointment of the master in this case by the plaintiff, does not vary the question. Though appointed and paid by *M'Intyre*, he was bound to follow the directions of *Aken & Brice*, during the voyage. In the case of *Moss* v. *Byrom*,§ which has been cited on the other side, it does not appear that either party assented to the acts of the master. His cruising was an act perfectly and exclusively his own. The plaintiffs had hired the vessel from the agent of the owner, for a trading voyage; and it being a charter, or general affreightment of the ship, the plaintiffs were deemed owners *pro hac vice*, and the conduct of the master was regarded as *barratry*.

THOMPSON, J. delivered the opinion of the court.

The loss claimed in this case is for the *barratry* of the master, and the right of the assured to recover will depend on the determination of the question, who is to be deemed owner of the vessel for the voyage? It is not denied that the conduct of the master amounted to *barratry*, provided the assured is to be considered as owner of the brig, for the voyage insured. The plaintiff was the owner, but he had chartered the vessel to *Aken & Brice*, who, it is contended, must be considered owners *pro hac vice;* and the acts of the master, which are alleged as barratrous, having been committed, by the procurement, orders and directions of *Brice*, one of the hirers, would not constitute *barratry*. It appears that the assured equipped the brig, hired and put on board the master and crew, and paid them, furnished the provisions and other necessaries for the voyage. There was also excepted out of the charter one half the cabin, and the privilege for twenty barrels on account of the mate and captain, and so much of the hold as might be necessary for the accommodation of the master, mariners, provisions, water and fuel for the crew. Under such circumstances, I should not consider *Aken & Brice* as owners for the voyage. By the

charter-party the owner of the vessel covenants to carry and
deliver the goods ; he is, therefore, responsible for the con-
duct of the master and crew, and if there be a failure of de-
livery by reason of their misconduct, he is accountable.——
The plaintiff retained the controul and management of the
vessel, and was bound to keep her furnished with a compe-
tent crew. *Barratry* is something contrary to the duty of
the master and mariners, the very terms of which im-
ply, that it must be in the relation in which they stand to the
owners, who are their employers, and whose orders they are
bound to pursue. I apprehend the distinction to be, that
where, by the terms of the charter, the ship-owner appoints
the master and mariners, and retains the management and
controul of the vessel, the charter is rather to be considered
as a covenant to carry goods ; but where the whole manage-
ment is given over to the freighter, it is more properly a
hiring of the vessel for the voyage, and in such case the
hirer would be deemed owner *pro hac vice ;* 2 *Atk.
Paul* v. *Birch.* This appears to me to be a rational distinc-
tion, and one, that is in no way contradicted, but rather sup-
ported, by the case of *Velleijo* v. *Wheeler, Cowp.* 142, *Marsh.*
455--6, so much relied on by the defendant's counsel.——
According to *Marshall's* report of that case, the court laid
down the distinction above taken, and considered the per-
son having the controul of the vessel as owner ; that if a
ship be let out generally to freight, the freighter is owner
for that voyage, but if there be only a covenant to carry
goods, the owner of the ship would have the *direction of her,
and the hiring of the master and mariners.* In *Cow-
per's* report of the case, it is stated by counsel, and not con-
tradicted, that *Darwin,* the freighter, *did appoint the master
for the voyage ;* and Mr. Jus. *Aston* in delivering his opin-
ion says, the *hulk of the ship* belonged to *Willes,* but he *had
nothing to do with it,* having chartered it to *Darwin,* and
so the jury did right in considering him owner *pro hac vice.*

Another question raised, though not much pressed on the
argument of this case, related to the sufficiency of the pre-
liminary proofs. This objection appears to me not well

NEW-YORK, taken. The claim by the assured, when he abandoned, was
May, 1806. for a loss by the barratry of the master, and he exhibited as
M'Intyre. preliminary proof of that loss, a paper purporting to be the
v. heads of a protest by the master, and also a letter from the
Bowne. master to the plaintiff. The protest states how *Brice*, the
supercargo, interceded with, and eventually prevailed on the
master to do, what is admitted to amount to barratry. In
addition to. which, it was proved that the abandonment was
for barratry, and the witness understood the underwriters,
as being satisfied with the preliminary proofs which had been
exhibited, and it was thereupon agreed between the parties,
that the plaintiff might make a further insurance, without pre-
judice to his claims against the defendant; and that if the in-
surers on the original policy were liable, such new insurance
should be for their benefit. Under such circumstances,
even admitting the documents exhibited, not to have been
competent preliminary proof, I should consider the under-
writer, as having waived his claim to more formal proof,
and as admitting the loss as stated in the heads of the protest,
for the purpose of bringing up the question whether the cir-
cumstances would warrant a recovery for *barratry.* It
would, I think, be extremely rigorous to turn the plaintiff
round to a new action on account of an objection, which
must be considered as merely formal.

   The opinion of the court, therefore is, that the plaintiff
is entitled to recover as for a total loss.

                       Judgment for the plaintiff.