Williams *v.* Johnson.

———————• ◦-•———————

## WILLIAMS and others *vs.* JOHNSON.

By an agreement between L. and the plaintiffs, L. agreed to charter to the plaintiffs the canal boat Jeffersonian for the sum of $500, from the opening of canal navigation in 1847 until its close. L. also agreed to run and man said boat at $110 per month and 10 cents per mile for towing, night and day, and to pay all other running expenses, tolls excepted. The boat was to be kept in good running order, free of expense to the plaintiffs, and should she be lost, burnt, or otherwise disabled, the charter was to be paid for as *pro rata* for the whole season. In case L. should sell the boat he was to be at liberty to transfer the charter to the new boat he might obtain in exchange. *Held* that the true construction of the agreement was that it did not transfer to the plaintiffs the *ownership* of the boat, during the season of canal navigation: but that L. remained the owner, and therefore might *sell* the boat; and that upon such a sale being made by him, the right to the freight subsequently earned passed to the purchaser.

*Held also,* that the purchaser had a lien upon goods of the plaintiffs transported in the boat after its purchase by him, for freight; and that the remedy of the plaintiffs was not by an action of replevin, for such goods, but by an action of covenant against L., upon the charter-party.

THIS was an action of replevin for the wrongful detention by the defendant of a quantity of corn. The defendant pleaded non-detinet, and a special plea of property in himself, and gave notice that he had a lien, as a common carrier, upon the property in question, for the carriage and transportation thereof. The cause was referred to Amos Dean, Esq. sole referee. On the hearing before the referee it was proven on the part of the plaintiffs that they were forwarders, on the Erie canal. That their business at Buffalo was generally done in the name of A. W. Johnson, and at Albany in the name of H. A. Williams. That Isaac Lincoln owned the canal boat Jeffersonian, and executed to the plaintiffs the following writing, viz. : "Memorandum of an agreement between Isaac N. Lincoln and H. A. Williams & Co. to wit. Said J. N. Lincoln agrees to charter to H. A. Williams & Co. the boat Jeffersonian, now lying in Albany, for the sum of five hundred dollars, payable as follows : $100 June 1st, $100 July 1st, $100 Sept. 1st, $100 Oct. 1st, $100 Dec. 1st, and to run and man said boat at one hundred and ten dollars per month, and ten cents per mile for towing night and day. Tolls on boat and horses to be paid by H. A. Williams & Co. All other running expenses are included above. Said boat is to be kept in good running order free of expense to said Williams & Co. ; and should she be lost, burnt, or otherwise disabled, said charter is to be paid for as pro rata for the whole season. Said charter commences on the opening of canal navigation 1847, and continues to its close. In case said Lincoln should sell said boat he has liberty to transfer this charter to the new boat he may obtain in exchange.

Albany, February 27, 1847.     ISAAC N. LINCOLN.

           H. A. WILLIAMS & Co.

               per Johnson."

Lincoln commenced running for the plaintiffs, under this article, in the early part of May, 1847, and made a trip to Buffalo, and returned with a load for them, which was delivered to Williams. The defendant was on the boat with Lincoln when it went out and when it returned. About the 1st of June, Lincoln went with the boat again, for Buffalo, and the defendant

was with him. The boat returned about the 15th of June to Albany; the defendant and Lincoln being both on board of her. She brought back 2500 bushels of corn. A shipping bill which was as follows was given in evidence:

"Buffalo, June 10, 1847.

Shipped in good order by William Chard on board canal boat Jeffersonian, —— Line, whereof ——— is master, the following named articles, to be delivered in good order as addressed.

| | | | |
|---|---|---|---|
| | 958 bush. corn | | |
| C. R. Miller. | Lake freight &c. 10½ | | |
| coll. | my charges ½ | $105,38 | |
| J. S. Lake & Co. | canal freight 30 | | |
| New-York | 1550 bush. corn | | |
| & H. Williams | Lake freight &c. 10 | 155,00 | |
| Albany. | my charges  ½ | 7,75 | $268,13 |
| | canal freight 30 | ——— | |
| | Advanced for tolls, &c. | 175 | |
| | Cash for expenses | 24 | 24 |
| | | | 443,13 |
| | | | 467,13 |
| | | | 752,42 |
| | | | $1219,53 |

Rec'd my charges of A. W. Johnson.   W. CHARD."

This shipping bill was sent by A. W. Johnson, at Buffalo, to H. A. Williams. A portion of this corn was delivered to Williams before this suit was commenced. The defendant then said the residue should not be delivered unless the canal freight was paid. After this refusal the present suit was commenced.

The plaintiffs gave in evidence the following receipt: " Rec'd, Albany, May 31st, 1847, from H. A. Williams & Co., fifty-two $\frac{57}{100}$ dolls. for balance of settlement and charter to June 1.

J. N. LINCOLN."

In June, 1847, the price of freight was nearly double what it was in June, 1846. A demand of the corn was made of the defendant by Williams' book-keeper before suit brought, and he refused to deliver, on account of the canal charges not being

paid, and said he owned the boat. The plaintiff rested, and the defendant's counsel moved for a nonsuit, on these grounds: 1. That by the shipping bill introduced in evidence, the corn appeared to be consigned to H. A. Williams; and that the action, therefore, should have been brought in his name, and not by the plaintiffs as a firm. 2. That the plaintiffs had not proved themselves to be the owners of the corn, or entitled thereto. 3. That the defendant was proved to be the owner of the boat, and entitled to the freight, and therefore entitled to the property. The referee denied the motion.

On the part of the defendant it was proven that after part of the corn had been delivered to Williams, the defendant asked him if he would pay him for bringing down the corn the price mentioned in the bill. Williams told him he would only pay him according to the charter. The defendant then said he would stop delivering the corn, and did stop. The defendant gave in evidence a bill of sale of the boat Jeffersonian, executed by Isaac N. Lincoln to the defendant, on the 9th day of June, 1847, for the consideration of $1100; Lincoln covenanting, in the bill of sale, to warrant and defend the sale. One hundred dollars was to be paid by the defendant on the delivery of the bill of sale, and $1000 in three equal payments, on the 1st of July, August and September, with interest. The shipping bill accompanying the cargo was then given in evidence by the defendant, and was as follows:

"Buffalo, June 10, 1847.

Shipped in good order by William Chard, on board canal boat Jeffersonian, of Albany, —— line, whereof —— is master, the following named articles, to be delivered in good order as addressed.

| H. A. Williams, | 2508 bushels corn, | 140,448 Inda. |
| Albany, | Canal freight 30c. | |
| | Toll advanced, | $175 |
| | and cash, | 24 |
| C. Collect. | | |

(Signed.)    W. CHARD."

The defendant proved by Isaac W. Lincoln, that he executed

the bill of sale of the Jeffersonian to the defendant, on the day it bore date. That the shipping bill last mentioned was made out by Chard and given by him to the defendant. That the defendant was in the possession of the boat at the time. That the defendant made a bargain with Chard for a load of corn, to be brought to Mr. Vandenburgh at 30 cents a bushel. That Chard was a shipper in Buffalo, no way connected with Williams. When the defendant looked at his papers he found that the corn was consigned to Williams. He then refused to bring the freight. Chard told him that Johnson, one of the plaintiffs, and Patten, had requested him to consign it to Williams, as they wanted to contest whether the defendant was owner. The defendant told Chard he had not put on the words " C. Collect," and Chard then put those words into the bill. That he (Lincoln) delivered the boat to the defendant, on the day of the sale, and that the defendant had been in possession of her ever since; and that she was sold some two or three days before she was loaded. That he (Lincoln) had run a boat since, in Bromley's line. That previous to the sale the defendant had been a hired man to him at $20 per month; that before he sold to him he showed him the article between Lincoln and the plaintiffs; and that the defendant was present when he received the advance from the plaintiffs. That the defendant held two notes against him of $50, which the defendant gave up to him, and that he did not receive any more of the purchase money until after the plaintiffs replevied the corn. That the defendant gave him a chattel mortgage on the boat, for the purchase money. It was proved that the shipping bill which accompanied the cargo was shown to Williams, and the freight demanded at his office, before the corn was replevied. The corn was worth between 90 cents and $1 per bushel. The defendant told Williams that he owned the boat; that he bought it of Lincoln, and would not deliver the corn unless Williams paid him the freight. The freight due was shown to be $605,46.

The testimony closed, and after argument by counsel, in which all the arguments raised in this court were insisted upon before the referee, the referee held that by the true construc-

tion of the instrument the plaintiffs acquired a right, not to the boat, but only to the use thereof, for the time mentioned in the contract; and that therefore, the defendant was entitled to a report in his favor, on that sole ground. And he reported in favor of the defendant for $605,46. The plaintiffs, upon a case, moved to set aside the report.

*J. K. Porter,* for the plaintiffs.

*William Barnes,* for the defendant.

*By the Court,* WATSON, J. The referee in this case placed his decision upon the right ground; for if by the instrument executed between Lincoln and the plaintiffs the ownership of the boat was in the plaintiffs, from the opening to the close of canal navigation, then Lincoln had no right to sell to the defendant, and of consequence the defendant had no claim for freight, against the plaintiffs. The question then is, what is the true construction of that instrument? Did it transfer to the plaintiffs the ownership of the boat, during the season of canal navigation? This may be tested in this way: suppose the plaintiffs and Lincoln had each laid claim to the freight of a voyage where the cargo was consigned to a third person. The case then would be precisely similar to that of *Clarkson* v. *Edes,* (4 *Cowen's Rep.* 470.) There the words of the charter-party were still stronger than those of the instrument under consideration, though many of the covenants strongly resemble those in this one. The owners, in that case, agreed *to freight and to let to the other party the whole of the schooner Thetis,* for a particular voyage. The owners engaged that the schooner should be tight, strong, well manned, victualed and appareled, and to be kept so during the voyage. The charterers were to pay to the owners at the rate of $325 per month, at the expiration of each month, together with all port charges; and also to advance moneys as they should be required for the necessary expenses and disbursements of the vessel; and if they should request the commander of the schooner to return to New-York from Havana,

without going to other ports mentioned in the charter party, the owners covenanted to do so. In that case a contest arose between the owners and the charterers, as to which was entitled to the freight. The court, in giving their decision, say it depends wholly upon who was the *owner* of the schooner during the voyage; the right to collect being *exclusive* in one of the parties. They then give their construction of the contract, and without stating their reasoning upon that subject. I shall content myself with giving the general rule laid down by them, which I consider the well settled rule at this time. " Where the general owner retains the possession, command and navigation of the vessel, and contracts to carry a cargo on freight for the voyage, the charter party is considered a mere affreightment, sounding in covenant; and the freighter is not clothed with the character or legal responsibility of ownership." The court cite in support of this doctrine *Marcadier* v. *The Chesapeake Insurance Co.* (8 *Cranch*, 49.) *Hoe* v. *Groveman*, (1 *Id.* 237.)

In the case of *McIntyre* v. *Bowne*, (1 *John.* 229,) Justice Thompson says that where by the terms of the charter the ship-owner appoints the master and mariners, and retains the management and control of the vessel, the charter is rather to be considered as *a covenant to carry goods*. And he held that in such a case the charterer is not the owner. That was a case of barratry, but the decision depended wholly upon the question who was owner of the vessel. In these cases, where the words of the charter-party were somewhat different in each instance, the courts, in putting their construction upon the different contracts, have elaborately examined each clause within them, and all for the purpose of determining from them who was the *owner* of the vessel. And the result of their deliberations has been the establishing of the general rule laid down in the 4th of Cowen's Reports, 481. These cases decide not only that the shipowner, under these circumstances, remains the owner, notwithstanding the charter-party, but that he is entitled to the freight, which he may enforce by lien, or by action. (4 *Cowen*, 481, *and the other cases cited.*) If Lincoln remained the owner of the boat, notwithstanding his contract with the plaintiffs, then, were there

no recognition in that instrument of a right in him to sell, I can see no reason why he could not sell and convey a good title to a third person. True he would be answerable to the plaintiffs, by virtue of his contract with them, for all damages they had sustained, from the time he sold it until the close of navigation, because he had put it out of his power to perform his contract, unless he transferred the charter to another vessel which he had obtained. For I hold, with the referee, that there is no limitation in that contract as to the time of his selling the boat. But that contract expressly recognizes the right of Lincoln to sell, and that, too, without any conditions. If so, then a sale by him is good. The position taken by the plaintiffs' counsel, that if Lincoln sold the boat the vendee would have to take her subject to the contract made with the plaintiffs, can not be well founded; for that depends entirely upon the ownership of the boat. If the plaintiffs were the owners *pro hac vice*, for the season of canal navigation, then a sale of her, by Lincoln, would be subject to such a condition; not being the absolute owners, but only having a contract with Lincoln by which he covenanted to carry goods for them, if he failed to perform it their remedy was on the contract. Nor can the allegation of the plaintiffs' counsel, that Lincoln and the defendant conspired together to defraud the plaintiffs out of the profits of their contract, by the sale of the boat to the defendant, if true, alter the case in any respect. If by this allegation the plaintiffs mean that the boat, as well as all that she carried, still belonged to Lincoln, and that the sale was a sham, then the finding of the referee is conclusive against them; for this point was raised before him. It is true the case states that the referee held that by the true construction of the instrument, the plaintiffs acquired a right, not to the boat, but only to the use thereof for the time mentioned in the contract, and that, therefore, the defendant was entitled to a report in his favor, and that this was the sole ground for his report. But this covers the whole ground; for it finds that Lincoln was the owner of the boat, as against the plaintiffs, with a right to sell. And he having, without fraud, sold it to the defendant, the defendant was entitled to recover for the

Williams *v.* Johnson.

freight. The report of the referee, which was before us on the argument, goes more into detail, and notices more minutely all the positions taken by the plaintiffs' counsel, before him ; and though he does not notice the fraud alledged as in any way affecting the rights of the parties, I take it for granted that so able and shrewd a lawyer did not omit it by mistake, and that he either came to the conclusion that there was no fraud, or that if Lincoln designed by this sale not to perform his contract, the only remedy of the plaintiffs was on the instrument. Suppose Lincoln had locked up the boat, discharged the hands, and refused to run her any longer, when the season of navigation was not half ended, would the plaintiffs be in any different situation than they would be if he sold the boat to another person, and put it out of his power to perform ? They would have no right to seize the boat, man her, and run her for the remainder of the season. That right remained in Lincoln according to the contract. Although in this case I have no doubt Lincoln, finding that freights were higher than when he made the contract, determined not to perform it, and therefore sold out, and in consequence of his so doing the plaintiffs lost the profits they might otherwise have derived from the contract, unless Lincoln is able to respond in damages; still, the case is one of every day occurrence, where the party making a contract does not sufficiently guard against contingencies of this kind, and must therefore abide by the consequences. The referee, after a careful examination, came to a conclusion in favor of the defendant, and I am satisfied that the case was decided upon a sound and salutary principle, though it may in some instances work injustice. Unless the owner of the vessel, or the master who sails her, and who represents the owner, should *alone* be entitled to recover for the freight, how numerous would be the contests as to who were entitled to it, and who would be safe in paying such freight ; unless these open, notorious acts, those of commanding and having possession of the ship, should characterize them as the owner, so far as their right to recover for freight is concerned.

The motion to set aside the report must be denied.

[ALBANY GENERAL TERM, Sept. 1, 1851. *Harris, Watson* and *Wright,* Justices.]