COLIN CAMPBELL, Respondent, *v.* WILLIAM C. CONNER, Sheriff, etc., Appellant.

Where goods have been shipped for transportation, the master or ship-owner has a lien for freight, expenses and charges, and for his liability upon outstanding bills of lading, and a sheriff cannot, by virtue of an attachment or other process against the shipper, take the goods without first giving indemnity (chap. 242, Laws of 1841).

In case the goods are seized by a sheriff without furnishing indemnity, in an action by the ship-owner for the unlawful taking, he is entitled to recover the full value of the goods.

The rights of the parties are not the same as if the action had been upon a bond of indemnity if one had been given; without furnishing the indemnity, the sheriff, in the absence of bad faith on the part of the carrier, is a trespasser, and the latter is entitled to recover the full value and hold the same as his security in lieu of the property.

As a vessel was ready to sail a sheriff seized a portion of its cargo, by virtue of attachment against the shipper, detained the vessel and unloaded the goods levied on. In an action by the ship owner for the unlawful taking, demurrage was allowed from the time of the seizure. *Held,* no error; that the time commenced when the seizure was made, not when the work of unloading began.

(Argued June 5, 1877; decided September 18, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought by plaintiff as owner of the barque John Campbell, against defendant, sheriff of the city and county of New York, to recover damages for unlawfully taking and removing from said vessel a quantity of flour, and for detention of the vessel. The sheriff sought to justify by virtue of certain warrants of attachment against the shipper of the flour to whom bills of lading had been delivered. The flour was shipped to Hamburgh. At the time of the seizure the attention of the sheriff was called by plaintiff's counsel to the fact that no bond of indemnity was given, as required by the statute (chap. 242, Laws of 1841), and he was forbidden to take the goods; he, however, persisted in so doing,

detained the vessel, unloaded and carried away the flour. Upon the vessel being released, the master procured a quantity of rosin to make up the cargo, and employed a stevedore to re-stow the cargo.

The seizure of the vessel and flour was made April 30, 1874; at that time the vessel was ready and about to go to sea, and on May 10, 1874, as soon as able after the flour was removed, she left port.

The bills of lading, which had been issued for the flour, were outstanding at the time of the trial.

On the trial, plaintiff's counsel stated that, unless a satisfactory bond of indemnity was given to indemnify plaintiff from any liability on the bills of lading, he would require to be indemnified, by a verdict, for the value of the flour, and requested defendant to furnish such bond, which his counsel declined to do.

The court directed a verdict for $9,207.57, composed of the following items:

| | |
|---|---:|
| For value of the flour | $6,467.29 |
| Freights and primage, as per bills of lading | 768.50 |
| Bill paid for restowing | 99.50 |
| Demurrage, 10 days, at $100 | 1,000.00 |
| Other items | 265.91 |
| | $8,601.56 |

| | |
|---|---:|
| Deducting, as saved from freight, on the rosin taken in, over and above expenses | 280.63 |
| Balance | $8,320.93 |
| Interest | 886.64 |

Further facts appear in the opinion.

*Robert S. Green*, for the appellant. The master after the attachment was levied had a right under chap. 242, Laws of 1841, to proceed to sue, unless the bond required by the

statute was furnished. (*Bartlett* v. *Carnley*, 6 Duer, 194.) No greater damages could be recovered than if the bond had been given and the suit was on the bond. (*Burt* v. *Dewey*, 40 N. Y., 283; *City of Memphis* v. *Brown*, 20 Wal., 289; *Mortland* v. *Smith*, 32 Mo., 225; *Danforth* v. *Pratt*, 9 Caush., 348; *Noxon* v. *Hill*, 2 Al., 215; *Baker* v. *Garrett*, 2 Bing., 56; *Paul* v. *Goodluck*, 2 Bing. [N. C.], 220; *Scott* v. *Waltman*, 3 Stark. [N. P. C.], 168; *Evans* v. *Brauder*, 2 H. Bl., 547; *Yea* v. *Litheridge*, 4 T. R., 433; *Jeffrey* v. *Bastard*, 4 A. & E., 823.) The bond was a contract of indemnity against actual loss only. (*Blossom* v. *Griffin*, 13 N., 569; *Campbell* v. *Jones*, 4 Wend., 306; *Chace* v. *Hinman*, 8 id., 452; *Aberdeen* v. *Blackman*, 6 Hill, 324; *Churchill* v. *Hunt*, 3 Den., 321; *Scott* v. *Tyler*, 14 Barb., 202; *Crippen* v. *Thompson*, 6 id., 532.) Merely actual damages should be shown. (*Belloni* v. *Freeborn*, 63 N. Y., 383; *Gilbert* v. *Wiman*, 1 id., 550; *Halsey* v. *Reed*, 9 Paige, 446; *Colbridge* v. *Heywood*, 9 A. & E., 633; *Reynolds* v. *Doyle*, 1 M. & G., 715; *Douglass* v. *Clark*, 14 J. R., 177.) As against Apfel, or a holder for a precedent, debt or one with notice, plaintiff's liability on the bills of lading was not fixed. (Pars. on Mor. Law., 139; *Newsome* v. *Thornton*, 6 East., 17; *Snaith* v. *Burridge*, 4 Taunt., 684; *Warner* v. *Martin*, 11 How. Pr., 209.) As against such persons it would be a perfect defense to show that the goods were taken by process of law, or had been delivered to the true owner. *Betts* v. *Stanton*, 1 Duer, 79; *Blivin* v. *H. R. R.*, 36 N. Y., 403; *The Idaho*, 11 Blatch., 218; 93 U. S., 575; *Stiles* v. *Davis*, 1 Blackf., 101; *Van Winkle* v. *U. S. M. S. S. Co.*, 37 Barb., 122; *Sheridan* v. *N. Quay Co.*, 4 C. B. N. S., 618; Aug. on Car., § 337*a*; *Barton* v. *Wilkinson*, 18 Vt., 186; *Brooks* v. *Steen*, 6 Hun, 516.)

*E. N. Taft*, for the respondent. Apfel could not have required the unloading of the goods and re-delivery of them to him without indemnifying the master against the consequence of any bill of lading signed by him. (*Bartlett* v.

*Carnley,* 6 Duer, 194; 3 Kent [12th Ed.], 228, note 6; Pars. on Ship. & Adm., 179, 299; Abb. on Ship. 595; *Tindall* v. *Taylor,* 28 L. & Eq. R., 210; *The Hermitage,* 4 Blatch., 474; *Ellis* v. *Willard,* 9 N. Y., 529.)

CHURCH, Ch. J.    The principal question in this case is, whether the value of the property seized and removed from the ship was properly included as an item of damages, which the plaintiff was entitled to recover.    The goods had been shipped, bills of lading issued, and were outstanding, and the vessel was ready to sail when the attachments were levied and the goods taken.    The freight and charges were not paid, nor was any bond of indemnity given.    The sheriff refused to give any bond at the time or since.    It did not appear on the trial that the plaintiff had paid but a small amount, by reason of the bills of lading, although they were still outstanding.

It is well settled at common law that a shipper cannot insist upon having his goods re-landed and delivered to him at the port of outfit, without paying the freight and indemnifying the master against the consequences of any bill of lading signed by him.    (Abbott on Shipping, 531, 595 [4th ed.]; *Bartlett* v. *Carnley,* 6 Duer, 195.)

An assignee of the bills of lading for value would be entitled to the property, and the master or owner would be estopped from denying that he had the goods.    (28 L. & Eq. R., 216.)    Neither creditors nor the sheriff can acquire, through attachment or other process, any better right to the property than the shipper had.    (6 Duer, *supra.*)

The Act of 1841, chapter 242, carries out, to some extent, the common-law rule, by making it lawful for the master to proceed on the voyage, notwithstanding the issuing of any attachment, unless a bond is given conditioned to pay all expenses, damages and charges which may be incurred, or to which they may be subjected for unloading the goods, and for all necessary detention.

Both the common law and the statute recognize the right

of the master or ship-owner to a lien for freight, expenses and charges, and for his liability upon outstanding bills of lading, and they are nesessarily co-extensive with the value of the goods. It follows, I think, that neither the owner of the goods nor any creditor can take the goods, without first giving the indemnity which the common-law rule and the statute prescribe.

An attachment cannot be levied. The sheriff is commanded to levy the goods of the defendant in the action. The goods in question were not his property. A lien, in the nature of a special property, existed in favor of the plaintiff to their full value. Neither the shipper nor sheriff had any more right to seize the goods, without furnishing indemnity, than any stranger. The plaintiff was entitled to hold the goods as his security, and, if taken by a stranger, it would have been a trespass, for which the plaintiff could recover their value, and hold the proceeds in lieu of the goods. The contention of the defendant is that the plaintiff has not been damnified. He insists that the rights of parties are the same as if the action was upon the bond, if one had been given. In this, I think, he is in error, The condition precedent to his right to interfere with the property was the indemnity which the law requires, and, without furnishing this indemnity, he had no right and was a trespasser, unless, perhaps, he could show bad faith on the part of the carrier. The plaintiff held the property as his security, and, when unlawfully taken, he is entitled to recover its value, and hold the amount for the same purpose and to the same extent as he held the property. If he escapes liability upon the bills of lading, the equitable powers of the court, upon motion or by action, can be invoked to award restitution to the owner or his creditors, but, until this is ascertained, he has a right to retain the property or its value. Any other rule would destroy the protection which the law affords. If the plaintiff could not recover the value of the goods in this action, he might be remediless, if his liability upon the bills of lading should afterward be enforced against him.

I assume that the bond required, at common law and by
statute, is an indemnity only. If the defendant had com-
plied with the law and furnished the bond, he would have
been in a condition to invoke the rule which he claims, in
respect to damages, but this he has deliberately refused to
do. He was, therefore, a wrong-doer in taking the prop-
erty, and the legal consequences follow.

Some of the items allowed are objected to, and in respect to
others a request was made to submit them to the jury. As
to twenty-nine barrels of the flour, there was no specific evi-
dence of its value, but the only evidence on the subject of
value of flour varied the price from six dollars to seven dol-
lars a barrel, and the judge allowed the lowest price. No
inference more favorable to the defendant could have been
drawn by the jury. As to the item of $99.50, stevedore's bill
for restowing after the flour was removed, there was no sub-
stantial conflict. It was not disputed that the cargo was broken
up to a considerable extent in removing the flour, and that a
considerable quantity of rosin was taken out and put on
deck. The stevedore employed by the sheriff stated that he
put the rosin back, but the other evidence, which is undis-
puted, is that in consequence of the disturbance to the cargo
in taking out the flour, the cargo had to be restowed to trim
the vessel, and had to be properly " chucked," to prevent
the cargo from rolling about, and endangering the vessel in
a gale. This fact was not disputed, and is almost self-evi-
dent. As to item for demurrage, the defendant requested
to go to the jury on the time and the amount. One or
more of the attachments were levied on the 30th of April,
and the vessel started the 10th of May, and ten days were
allowed. At the time of the seizure the vessel was ready to
sail, and the evidence is undisputed that they sailed as soon
as practicable. The time commenced when the vessel was
seized, and not when the work of unloading commenced.
As to the amount of demurrage, two witnesses testified it at
$100 a day. The difficulty with the defendant upon this
point is, that the evidence which it is claimed conflicted with

the evidence of these two witnesses, did not embrace all the items which constitute demurrage, and it does not appear that if the other items had been included, there would have been any discrepancy.

Objection is made to four items, deducted from the freight on the rosin taken in to supply the place of the flour, the amount of such freight, less these charges, having been allowed to the defendant. Wharfage $19.50, it is said, was included in the charge for demurrage. I infer that this item was for wharfage at Brooklyn, where the vessel was towed to receive the rosin, and it does not appear that it was included in the charge for demurrage. The stevedore's bill, $97.20, was paid, and there was no dispute as to its necessity, and the other two items are not shown to be improper.

I have also examined the exceptions in rejecting evidence in two instances, and they were not well taken.

The judgment must be affirmed.

All concur, except ALLEN, J., dissenting.

Judgment affirmed.