[No. 6,807.—Department No. 1.]

## HAYES v. CAMPBELL.

55  421
130  416

FACTOR — DEFINITION — AGENT — FREIGHT — MARITIME LIEN. — The plaintiff forwarded wheat to M.'s Sons, commission merchants, to be shipped to Europe, and sold by them for his account; and M.'s sons shipped the wheat in their own name on a vessel chartered by them, of which the defendant was master—the defendant having no notice of the plaintiff's ownership. After the wheat was placed on board, and the vessel had received about half her cargo, M.'s Sons became insolvent, and broke the terms of the charter-party by refusing to proceed with the loading; and thereupon, after demand and refusal to deliver, the plaintiff brought his action, and replevied the wheat. *Held*, that M.'s Sons had authority to deal with the wheat as their own in any contracts within the scope of their agency, and that the plaintiff was bound by their action.

ID.—ID—ID.—ID.—MARITIME LIEN. — *Held, further*, that the defendant was entitled to a lien on the wheat for the payment of the freight and charges on the completion of the voyage.

ID.—ID.—ID.—ID. — ID. — CHARTER PARTY. — CONSTRUCTION. — *Held, further*, that the fact, that M.'s Sons had chartered the ship for the voyage, did not operate to deprive the owner of the benefit of the lien upon the cargo; that such a contract is a letting of the carrying capacity of the vessel, and not of the vessel itself, and is considered in law a contract of affreightment.

APPEAL from a judgment for the plaintiff, in the Sixth District Court, County of Sacramento. DENSON, J.

*Milton Andros*, and *Charles Page*, for Appellant.

Morgan's Sons were factors (Civ. Code, § 2026, and note to annotated edition; Parsons on Contracts, 91; Story on Agency, § 33); and, as such, had authority to enter into the contract of affreightment with the defendant. (Civ. Code, § 2319; *Green* v. *Campbell*, 52 Cal. 586.)

It is well settled at common law that a shipper cannot insist upon having his goods relanded, and delivered to him at the port of outfit, without paying the freight, and indemnifying the master against the consequences of any bill of lading signed by him. ( *Campbell* v. *Conner*, 70 N. Y. 427 ; *Bartlett* v. *Carnley*, 6 Duer, 195, 200 ; *Tindal* v. *Taylor*, 4 El. & Bl. 219 ; *The Hermitage*, 4 Blatchf. 474 ; *The Nathaniel Hooper*, 3 Sum. 555 ; *Campbell* v. *Sunlight*, 2 Hughes, 9 ; *Ellis* v. *Willard*, 9 N. Y. 529 ; *Jordan* v. *Warren Ins. Co.* 1 Story, 342, 354 ; Angell on Carriers, § 368 ; Abbott on Shipping, 595 ; *Palmer* v. *Lorillard*, 16 John. 348 ; Hutchinson on Carriers, § 476, n. 1 ;

*Kern* v. *Deslandes,* 10 Com. B. N. S. 205; *Bird of Paradise,* 5 Wall. 545, 562; Story on Bailments, § 585; *Bulkley* v. *Naumkeag Steam Cotton Co.* 24 How. 386, 392.)

The cases relied upon by the plaintiff have not been followed by the later decisions, either in this country or in Europe. The defendant's lien was a valid lien, notwithstanding the charter to Morgan's Sons. There was no demise of the ship; the carrying capacity alone was let. (*Green* v. *Campbell,* cited *supra; Schooner Volunteer,* 1 Sum. 566; *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 49; Civ. Code, § 1959; *Certain Logs etc.* 2 Sum. 589, 594.)

*J. C. Ball, J. H. McKune,* and *W. F. George,* for Respondent.

The plaintiff being a stranger to the charter-party, his property cannot be taken, pledged, or held to satisfy the claim of appellant against Morgan's Sons. (*Wright* v. *Solomon,* 19 Cal. 76; *Everett* v. *Saltus,* 15 Wend. 475; *Saltus* v. *Everett,* 20 id. 267; *Warner* v. *Martin,* 11 How. (U. S.) 209.) The money for carriage was by the terms of the contract to be paid on delivery of the wheat in England. The failure to furnish cargo was a breach of the part of Morgan's Sons, sounding in damages, for which they were liable, but no lien could attach to the cargo for such damages. (*Wilson* v. *Hicks,* 26 Law J. (N. S.) Exc. 242; *Berley* v. *Gladstone,* 3 M. & Sel. 205; *Phillips* v. *Rodie,* 15 East. 261; *Olive* v. *Smith,* 5 Taunton, 56; *Hutton* v. *Bragg,* 7 id. 25; *Thompson* v. *Small,* 1 Com. B. 328.) A carrier has a lien for carrying the goods according to contract, not for having agreed to carry them. (*Higgins* v. *Bretherton,* 5 Car. & P. 2; 1 Esp. 119; Angell on Carriers, § 368.) For damages for any breach of contract he is relegated to his action at law; (*Phillips* v. *Rodie,* 15 East, 261; *Gray* v. *Case,* Law R. 6 Q. B. 522); and for failure to furnish cargo, no lien attaches to any goods. (*Pearson* v. *Goschen,* 17 Com. B. N. S. 352; *Wagner* v. *Smith,* 15 Com. B. 285; *Fry* v. *Bank of India,* Law R. 1 C. P. 689; *Chappell* v. *Comfort,* 10 Com. B. N. S. 802; 15 East, 547.) The owner of a ship cannot enforce a lien when he has chartered the ship to another, and the goods belong to a third person. (*Paul* v. *Birch,* 2 Atk. 621; *Kirchner* v. *Venus,* 12 Moore's P. C. 390.)

A lien for freight does not commence in any case till the ship breaks ground. (*Bailey* v. *Damon*, 3 Gray, 92; *Curling* v. *Long*, 1 Bos. & P. 634; *Clemson* v. *Davidson*, 5 Binn. 392; *Burgess* v. *Gun*, 3 Har. & J. 225; *Blossom* v. *Champion*, 37 Barb. 569.)

McKEE, J.:

The case presented for consideration is this: In 1874, E. E. Morgan's Sons were general shipping and commission merchants, doing business in the City and County of San Francisco, and engaged in buying and selling wheat, and in chartering vessels for the transportation of wheat from ports of California to ports of Europe, to be there sold by them for account of the owners. In that business they had chartered the ship *Charles Murdock*, of which the defendant in this action was master and part owner. The ship had proceeded to Vallejo to take on board a cargo of wheat for the charterers, according to the terms of the charter-party. Plaintiff being the owner of the wheat in controversy, forwarded it to Morgan's Sons at Vallejo, to be shipped to Europe, to be there sold by them for his account. Upon receiving the wheat, Morgan's Sons placed it on board the *Charles Murdock* in their own names, and the defendant received it on board, in the regular course of business, as the wheat of Morgan's Sons. When he received it he did not know that it belonged to the plaintiff, or to any other person or persons than Morgan's Sons; but he knew that they were shipping grain as the agents of the Grangers or farmers of the State. After the wheat had been placed on board, and the ship had received about half her cargo, Morgan's Sons became insolvent, broke the terms of their charter-party, and failed to proceed with the loading of the ship. Upon ascertaining that fact, the plaintiff demanded of the defendant the possession of his wheat, but made no tender to him then, or at any other time, of the freight or charges. The defendant refused to deliver the wheat, but was ready and willing to carry it under his charter-party, and the plaintiff brought this action of claim and delivery, in which the wheat was taken from the ship and delivered to the plaintiff. In shipping and relanding the wheat, the

defendant incurred no expense. The stevedores who loaded and relanded it were paid by the charterers or by the plaintiff.

Upon the case the Court below found, as a conclusion of law, that the defendant had never acquired any lien upon the wheat, and gave judgment for the plaintiff.

We are of opinion that the judgment is not supported by the findings; for it is apparent that the defendant, in receiving the wheat, dealt with Morgan's Sons either as owners of the wheat, (*Green* v. *Campbell*, 52 Cal. 586) or as agents, having power and authority to ship it and deal with it as their own (Civ. Code, § 2369); and, considered as owners or agents, with power to ship it in their own names, and sell and receive the money for it from the purchaser, the legal conclusion would be the same; for having power to do everything necessary or proper and usual, in the ordinary course of the business of shipping and selling the wheat, (§ 2319, Civ. Code) the plaintiff would be bound by their acts within the scope of their authority. Of course, as factors or agents they had no power to make any irregular transfer of the property consigned to them, or to deal with it in any way outside the usual course of business. An agent with power to ship and sell and receive the money from the purchaser, has no power to affect the property consigned to him for those purposes by tortiously selling it, or mortgaging or pledging it as a satisfaction or security for his own debt. The utmost that he could do, in that respect, would be to mortgage or pledge it to the extent of any lien which he might have upon it. (*Wright* v. *Solomon*, 19 Cal. 76; *Warner* v. *Martin*, 11 How. U. S. 209; subd. 2, § 2368, Civ. Code.)

But the shipment of the wheat by Morgan's Sons was not a pledge. They had no authority to pledge it. (Subd. 2, § 2368, *supra.*) But they had authority to ship in their own names, and sell at the port of delivery; and that included the power to deal with the wheat as their own in any contracts within the scope of their authority with the defendants, who had no knowledge that the plaintiff was the actual owner of it; and the actual owner was chargeable with knowledge that he had placed his property in the hands of his agents for the very purpose of enabling them to make such contracts as might be necessary and proper for transmitting it to Europe for sale on his account. He knew that, in execution of the agency, they had to make con-

tracts to which the law would attach a lien upon the property. When, therefore, the factors shipped the wheat in their own names, they were the only persons to whom the defendant could look, and with whom he dealt in receiving it. In the absence of knowledge that it belonged to the plaintiff, they, as shippers, were to him, in contemplation of law, the owners. From them and for them he received it as a common carrier for carriage, and the legal rights and duties of both parties became fixed by law the moment the wheat was placed on board of the ship. Having received it for the purpose of carriage, the defendant became bound to the shippers for the safe transportation and delivery of the wheat at the port of destination, and he was entitled to a lien on it for payment of his freight and charges on the completion of the voyage. (*Bulkley* v. *Naumkeag Steam Cotton Company*, 24 How. U. S. 391.)

This lien was created by law for the benefit of the carrier the moment that he received the goods for the purpose of carriage. "Such a lien," says Mr. Justice Clifford, "is regarded in the jurisprudence of the United States as a maritime lien, because it arises from the usage of commerce, independently of the agreement of the parties, and not from any statutory regulations. The legal effect of such a lien is, that the ship's owner, as carrier by water, may retain the goods until the freight is paid, or he may enforce the same by a proceeding *in rem* in the proper court." (*The Bird of Paradise*, 5 Wall. 555.)

The fact that the ship-owners had chartered the ship to Morgans' Sons for the voyage did not operate to deprive them of the benefit of the lien upon the cargo. Nor do the terms of the charter-party, or the circumstances of the shipment, show that the lien had been waived or extinguished. According to the charter-party, the owners had let only the carrying capacity of the ship, and not the ship itself. They retained the possession, command, and navigation of the ship, and the contract made between them and the shippers and charterers to carry the wheat on freight for the voyage for which the ship was chartered, is considered in law as a contract of affreightment. (*Marcardier* v. *Chesapeake Insurance Company*, 8 Cranch, 39.)

"In short, it appears to me," says Mr. Justice Story, "that, if the absolute owner does retain the possession, command, and control of the navigation of the ship during the voyage, and the

master is deemed his agent, acting under his instructions for the voyage, though authorized and required to fulfill the terms of the charter-party, the absolute owner must, under such circumstances, be still deemed owner for the voyage, and be liable as such to all persons who do not contract personally and exclusively with the charterer by a sub-contract with the latter, knowing his rights and character under the charter-party." (*Certain Logs,* 2 Sum. 596.) Such is the settled doctrine of American law upon the subject. (1 Johns. 229; 8 Wheat. 632; 3 Kent, 137–8.) Under the circumstances stated, the freighter is not clothed with the character or legal responsibility of ownership; nor was the ownership, in the case in hand, divested by the contract of affreightment made between the charterers and the defendant, consequently the wheat in the possession of the defendant was subject to the lien for the freight and proper charges which were due upon it.

This right of lien was inseparably associated with the possession of the wheat. So that, when the defendant rightfully obtained possession of it for the purpose of carriage, from those who had the authority to deal with it, he was entitled to retain possession until his duty in relation to it had been discharged, or, if from any cause the carriage was dispensed with, until his lien upon it had been extinguished by payment of the freight and charges or its equivalent.

And although the insolvency of Morgans' Sons, *before* the ship was laden and had " broken ground," but *after* the wheat had been placed on board, may have ended the transaction between them and the plaintiff as to the shipment and sale of the wheat, and dispensed with its carriage, yet the plaintiff was not entitled to the possession until he extinguished, or offered to extinguish, the lien which had attached to it. The defendant was not bound to reland it and deliver it to the plaintiff at the port of outfit, without tender or payment of the freight, or such other charges as were liens upon it. (Story on Bailment, § 585; *Campbell* v. *Connor,* 70 N. Y. 424; Hutchinson on Carriers, § 476, note; Abbott on Shipping, 595.)

Judgment reversed, and cause remanded to the Superior Court of Sacramento County for a new trial.

ROSS, J., and McKINSTRY, J., concurred.